[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14858
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-02069-MHC


YOOSUN HAN,

Plaintiff-Appellant,

versus

EMORY UNIVERSITY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 29, 2016)

Before WILSON, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Yoosun Han, a former employee of Emory University (Emory), appeals the district court's grant of summary judgment to Emory, in her suit brought under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2617.  On appeal, Han argues that the district court erred in granting summary judgment on her FMLA interference and retaliation claims.  We affirm.

## I.

Han formerly worked as a Manager of Research Projects in Emory's Department of Medicine.  She alleges that, during her time in the Department of Medicine, Emory interfered with the exercise of her FMLA rights and retaliated against her for exercising those rights.  Han's claims stem from her period of employment from late 2012 to October 2013.  Following the worsening of her medical condition during January 2013, which prevented her from working during the morning hours, Han began requesting a flexible work schedule.  Although encouraged by her employers, she declined to apply for FMLA leave until April 2013, instead using sick leave and accrued time off.  Han repeatedly requested accommodated work hours, but her employer continued to refuse her request for later hours and repeatedly instructed her to not work past 6 p.m.  Additionally, Emory required Han to report her FMLA leave hours and to provide weekly progress reports on her work completed when she was not on leave.  In October 2013, Emory terminated Han's employment.

Thereafter, Han filed her FMLA claims in district court, alleging both that Emory's actions leading up to her termination constituted interference, and her October 2013 termination constituted retaliation. Emory filed a motion for summary judgment. The district court found that Han's allegations of interference were unfounded, citing the lack of evidence that she was pressured to forego leave or that her FMLA leave was otherwise interfered with in any way.

As to Han's retaliation claims, the district court determined that Emory provided legitimate, non-retaliatory reasons for firing Han, including: (1) Han failed to follow policies and instructions when she refused to work within the daytime schedule assigned to her; (2) Han refused to report her FMLA leave as instructed; and (3) Han refused to notify Emory of her absences and late arrivals, as requested. Han conceded that she disregarded explicit instructions to not work after hours, and continued to report her FMLA leave in the regular leave system. She also conceded that beginning in mid-August 2013 she stopped reporting her FMLA leave as instructed. Furthermore, Han acknowledged that she stopped reporting her late arrivals, determining on her own that it was unnecessary to keep reporting when they became frequent. Han was repeatedly instructed on Emory's policies and given several warnings in regards to her failure to follow explicit instructions, but she refused to alter her behavior. As Han conceded her behavior,

the district court concluded that she could not show that Emory's reasons were pretextual. Therefore, the district court granted summary judgment to Emory.

## II.

We review a district court's entry of summary judgment de novo. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291 (11th Cir. 2012). Summary judgment should be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of identifying th[e] portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553(1986) (internal quotation marks omitted). The burden then "shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011). A "mere scintilla of evidence" is not enough for the non-moving party to overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

Both of Han's claims arise under the FMLA, which provides that eligible employees are entitled to up to 12 work weeks of unpaid leave during any 12-

4

month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "[T]he FMLA creates two types of claims: interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act, and retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because [s]he engaged in activity protected by the Act." *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citations omitted). We will address each claim in turn.

## III.

## A. Interference

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of[,] or the attempt to exercise, any" FMLA right. 29 U.S.C. § 2615(a)(1). An FMLA interference claim requires the plaintiff to show that she was entitled to a benefit denied by the defendant. *Strickland*, 239 F.3d at 1206–07.

Han claims that Emory interfered with her rights under the FMLA because: (1) Emory reduced her pay more than necessary according to the FMLA leave she took; (2) Emory denied her request for accommodated hours; (3) Emory required her to submit status reports on her work; and (4) Emory fired her while she had FMLA leave remaining. However, none of these arguments are availing. The

5

district court did not err in granting Emory summary judgment on Han's interference claims.

First, Han has not provided any evidence beyond her own assertions that her pay was improperly reduced. While the court "must draw all reasonable inferences from the evidence in favor of [the plaintiff], it is unreasonable to infer from [the plaintiff's] speculative testimony alone." *Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006).  Moreover, even assuming that Emory improperly reduced some of Han's pay, she was not prejudiced and thus, would not be entitled to relief. *See Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89, 122 S. Ct. 1155, 1161 (2002) (establishing prejudice requirement for interference claim).  Emory required Han to track and report her FMLA hours.  By Han's own admission, she did not report her leave for two and a half months in order to avoid salary reductions. Thus, she was actually overpaid and has not established prejudice for a successful interference claim.

Furthermore, Han spends considerable time reiterating that Emory failed to accommodate her requests to arrive and stay at work late, so that she did not have to use her FMLA hours.  The district court was correct to deny this interference claim because the FMLA requires no such accommodation from employers.  The FMLA leave provisions are "wholly distinct" from the reasonable accommodation employers are obligated to provide under the Americans with Disabilities Act

6

(ADA). *See* 29 C.F.R. § 825.702(a).  As Han's claims were brought under the FMLA and not the ADA, she has no claim for reasonable accommodations from Emory.

As for Han's claim that the requirement of progress reports and manual tracking of FMLA hours was harassment that deterred her from taking needed FMLA leave, the district court was correct to grant summary judgment.  A review of the record shows that the progress reports were simply an effort to increase communication on work when Han was not on leave. Furthermore, the FMLA regulations themselves imply the reasonableness of reporting requirements.  They expressly state that "[a]n employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." *See* 29 C.F.R. § 825.311(a).  Based on the record before us, even taking the evidence in the light most favorable to Han, no reasonable jury could conclude that Emory's de minimis reporting requirements arose to interference.

Finally, Han's claim that her termination constitutes interference also fails.  There is nothing in the FMLA that prevents an employer from terminating an employee who still has leave.  The FMLA states that an employee has the right following FMLA leave to be restored to their position prior to leave. 29 U.S.C. § 2614(a)(1)(A).  And it allows an employer to "deny reinstatement following FMLA leave if [the employer] can demonstrate that it would have discharged the

employee even if [s]he had not been on FMLA leave. *Jarvela v. Crete Carrier Corp.*, 776 F.3d 822, 831 (11th Cir. 2015).  As Emory's reasons for terminating Han were unrelated to her leave, her claim that the termination constituted interference is unfounded and not supported by law.

For these reasons, the district court's grant of summary judgment on all Han's interference claims was appropriate.

## B. Retaliation

The district court also did not err in granting Emory summary judgment on Han's retaliation claim.  To establish an FMLA retaliation claim, an employee must show that her employer intentionally discriminated against her for exercising a right guaranteed by the FMLA.  *Strickland*, 239 F.3d at 1206.  The standard is more difficult than an interference claim, and the employee must show through direct or circumstantial evidence that her employer's actions were "motivated by an impermissible retaliatory or discriminatory animus."  *Id.* at 1207.  Direct evidence is evidence that "reflects a . . . retaliatory attitude correlating to the . . . retaliation complained of by the employee" without need of inference.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotation marks omitted).

Without direct evidence of the employer's retaliatory intent, we apply the burden-shifting framework established by the Supreme Court in *McDonnell*

8

*Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  *Strickland*, 239

F.3d at 1207.  To prove a retaliation claim under this framework, the employee

must show that: (1) she engaged in statutorily protected activity; (2) she

experienced an adverse employment action; and (3) there is a causal connection

between the protected activity and the adverse action.  *Id.* If the employee makes

such a prima facie case, the burden then shifts to the employer to articulate a

legitimate reason for the adverse action.  *McDonnell Douglas Corp.*, 411 U.S. at

802.  If the employer does so, the employee must then show that the employer's

reason for the adverse action is pretextual.  *Id.* at 804.  Pretext is proven if it is

shown that the reason was false and that the action was actually motivated by

retaliation.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742,

2752 (1993).

Han has not shown direct evidence that she was fired because she took

FMLA leave.  Despite Han's assertions, when read in context, her supervisor's

deposition statements do not show any direct evidence of retaliation, as they lack

any reflection of a retaliatory attitude or discriminatory animus.  The statements

Han alleges show direct evidence regarding the termination make it clear that Han

was not fired for taking FMLA leave, but for repeated acts of insubordination.

Therefore, we apply the *McDonnell Douglas* framework. Han has not met

her burden under *McDonnell Douglas*. While she did demonstrate that she suffered

an adverse employment action (her termination), and it did occur in temporal proximity to her protected activity of taking FMLA leave, Emory provided legitimate reasons (insubordination) for the termination.

Han has failed to demonstrate a triable issue exists as to whether those reasons are pretext. Han admits her refusal to report her FMLA hours starting in mid-August and refusal to report her tardiness to work, in contravention of explicit repeated instructions.  She received repeated warnings and ignored all requests to improve her performance, deciding for herself that Emory's reporting policies were unnecessary.  While Han made known to her supervisor that she disagreed with Emory's policies in regards to late hours, reporting hours and late arrivals, a party cannot show pretext "by simply quarreling with the wisdom of [the employer's given] reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). In fact, "[t]he heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons." *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).  Based on the record, a triable issue of pretext does not exist.  An employee "cannot show that the reasons . . . are pretextual when [s]he admits their truth," *Id.*, and Han has admitted to the insubordination that Emory cites as the reason for her termination.

Accordingly, the district court did not err in granting summary judgment on Han's retaliation claim.

**AFFIRMED.**